Jonathan A. Stieglitz, Esq.
THE LAW OFFICES OF JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Suite 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email: jonathan.a.stieglitz@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **JESSICA ARMENTA,** *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>-against-<br><br>**FAVE ME, INC.**, *a California corporation,*<br><br>Defendant. | Civil Case No.:<br><br>**<u>CIVIL ACTION</u>**<br><br>**CLASS ACTION COMPLAINT**<br>and<br>**JURY TRIAL DEMAND** |

Plaintiff Jessica Armenta ("Plaintiff") brings this class action against Defendant Fave Me, Inc. ("Defendant" or "Faveme"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

# NATURE OF THE ACTION

1. This is a putative class action under the 47 U.S.C. § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), arising from Defendant's violations of the TCPA.

2. Defendant is a brand loyalty app provider. To promote the services of its clients, Defendant engages in sending autodialed telemarketing text messages.

3. After making an inquiry for a quote from one of Defendant's clients, Plaintiff began to receive telemarketing text messages sent to her phone number by Defendant, despite the fact that she had already communicated to the client that she did not wish to be contacted any further.

4. Plaintiff communicated again to Faveme that she did not wish to be contacted on behalf of the client. Nonetheless, Plaintiff received an additional automated telemarketing message from Defendant, this time in the middle of the night.

5. By failing to honor do-not-call requests after receiving requests for the communications to stop, Defendant has harmed hundreds, if not thousands, of consumers.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the ensuing invasion of privacy, aggravation and disruption of the daily life of countless individuals.

Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies.

## PARTIES

7. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Reseda, California, and the sole and primary subscriber and user of the cellular telephone number \*\*\*-\*\*\*-3006 (the "3006 Number").

8. Defendant is, and at all times relevant hereto was, a California corporation and a "person" as defined by 47 U.S.C. § 153(39) that maintains its primary place of business and headquarters in Sherman Oaks, California. Defendant directs, markets, and provides business activities throughout the State of California.

## JURISDICTION, VENUE, AND STANDING

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

10. Defendant is subject to personal jurisdiction in California because it is a corporation duly organized under the laws of California and maintains its principal office in California, and is therefore at home in California.

11. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the wrongful conduct giving rise to this lawsuit took place within this judicial District.

12. Plaintiff has standing to maintain this action because Plaintiff suffered a legal injury as a result of Defendant's violations of the TCPA, and because she is not requesting an advisory opinion from this Court. Thus, Plaintiff has a sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy.

## FACTUAL ALLEGATIONS

13. Defendant owns and operates the Fave Me app loyalty program, a service by which clients of Defendant may offer rewards to their customers or potential customers through the app.

14. SoCal Climate Control ("SoCal") is one such of Defendant's clients

15. On or about August 18, 2022, Plaintiff reached out to SoCal for a quote on updating her heat and cooling in her home.

16. The next day, a representative for SoCal climate came and provided Plaintiff a quote. Plaintiff was not interested after seeing the price and indicated she did not wish to proceed any further.

17. On August 20, 2022, she received a telemarketing text message from SoCal. Plaintiff did not wish to proceed further so she replied with the word

"STOP" and received a subsequent confirmation that she had been unsubscribed from further texts.

18.  Despite this, on September 15, 2022, Plaintiff received another telemarketing text message from a different phone number on SoCal's behalf, thanking her for her business and requesting a review of SoCal by utilizing the Faveme app.

19.  That same day, Plaintiff received yet another telemarketing text message letting her know she had rewards from SoCal that she could access through the Faveme app.

20.  Plaintiff, frustrated since she had affirmatively opted out of communications from SoCal on August 20, again responded with the word "STOP" and immediately received a confirmation saying that she had been unsubscribed.

21.  Plaintiff followed this by posting a Yelp review in which she expressed her frustration at continuing to be contacted by, or on behalf of, SoCal, despite the fact that she had clearly indicated she did not wish to receive further communications. SoCal responded to this review assuring that she was removed from any contact list.

22.  Despite these assurances, on December 14, 2022, at 12:47 AM, Plaintiff received *another* telemarketing text message, again indicating that she had rewards from SoCal waiting for her if she just accessed the Faveme app.

23. The following morning, Plaintiff received a voicemail from a Mr. Mark Cave, identifying himself as the CEO of Faveme. Mr. Cave apologized that Plaintiff had received an "unnecessary and unauthorized text from us" as the loyalty program provider for SoCal and indicated that in the previous evening, the app's database "began firing off texts", causing him to wake at 3 AM and tell the head programmer to "shut it down".

24. Upon information and belief, Plaintiff did not make any agreement to be contacted or marketed to using automated text messaging when she engaged with SoCal for a quotation.

25. Plaintiff received the subject text messages and calls from within this judicial District and, therefore, Defendant's violation of the TCPA occurred within this District.

26. The purpose of Defendant's text messages was to promote and solicit the services offered by its clients.

27. Defendant's texts and calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

28. Upon information and belief, at no point in time did Plaintiff provide Defendant with her express consent to be contacted.

29. To the extent that Defendant had any consent to contact Plaintiff on behalf of SoCal, that consent was expressly revoked when Plaintiff responded "Stop" to SoCal's message on August 20, 2022.

30. Despite this, Defendant sent Plaintiff automated telemarketing text messages on September 15, 2022 and on December 14, 2022.

31. Upon information and belief, Defendant caused similar text messages to be sent to other individuals residing within this judicial District.

32. Automated telemarketing text messages, such as the ones made by Defendant, are subject to the TCPA. See Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

33. 47 C.F.R. § 64.1200(d) requires that a company implement certain minimum policies and procedures prior to making telemarketing calls.

34. These policies and procedures include maintaining a written policy, available upon demand, for maintaining a do-not-call list; training personnel engaged in telemarketing; and recording and honoring do-not-call requests when made.

35. Upon information and belief, Defendant does not have a written policy for maintaining an internal do-not-call list pursuant to 47 U.S.C. § 64.1200(d)(1).

36. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do-not-call list pursuant to 47 U.S.C. § 64.1200(d)(2).

37. Upon information and belief, Defendant fails to honor do-not-call requests – including as evidenced by the continued text messages to Plaintiff after she directly asked first SoCal, and then Faveme, not to be contacted.

38. The text messages originated from telephone numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

39. Plaintiff and the Class members have suffered concrete harm because of Defendant's unwanted and unsolicited text messages, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited text messages;
- Invasion of Privacy;
- Intrusion upon Seclusion;
- Nuisance,
- Aggravation; and

- Annoyance.

40. Defendant's text messages and phone calls also inconvenienced Plaintiff and caused disruption to her daily life.

41. These forms of injury as sufficient for Article III standing purposes.

42. Defendant directly initiated the unlawful text messages to Plaintiff and the other Class members and is directly liable for violating the TCPA.

## CLASS ALLEGATIONS

### PROPOSED CLASS

43. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of all other similarly situated persons as a class action. The "Classes" that Plaintiff seeks to represent are comprised of and defined as:

> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent more than one text message within a 12-month period from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a communication indicating they wished to stop contact.**

44. Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

45. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

## NUMEROSITY

46. Upon information and belief, Defendant has placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States after they had revoked consent to be contacted. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

47. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery and a review of Defendant's records. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMONALITY

48. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Among the questions of law and fact common to the Class are:

i. Whether Defendant violated 47 C.F.R. § 64.1200(d);

ii. Whether Defendant's conduct was knowing and willful;

iii. Whether Defendant adhered to requests by class members to stop sending solicitation text messages to their telephone numbers;

iv. Whether Defendant keeps records of text and call recipients who revoked consent to receive texts and/or calls;

v. Whether Defendant has any written policies for maintaining an internal do not call list;

vi. Whether Defendant violated the privacy rights of Plaintiff and members of the class;

vii. Whether Defendant is liable for damages, and the amount of such damages; and

viii. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

49. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services after the consumer has opted out of further communication is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

50. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## ADEQUACY

51. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

52. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the thousands or millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant

the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

54. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(c)(2)
*Individually and on Behalf of the Internal Do Not Call Class*

55. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

56. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in

violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

57. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's

request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. 47 C.F.R. § 64.1200(d)(3), (6).

58. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

59. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

60. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

61. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

62. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of

Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

63. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

64. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

65. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

66. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class, prays for the following relief:

    i.   An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Marcus & Zelman, LLC as Class Counsel;

    ii.   An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(c)(5);

    iii.   An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(c)(5);

    iv.   An order declaring that Defendant's actions, set out above, violate the TCPA;

    v.   An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Class;

    vi.   Pre-judgment and post-judgment interest on monetary relief; and

    vii.   Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: January 25, 2023

/s/ Jonathan A. Stieglitz
Jonathan A. Stieglitz, Esq.
THE LAW OFFICES OF JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Suite 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email: jonathan.a.stieglitz@gmail.com

Joseph Kanee, Esq.
MARCUS & ZELMAN, LLC
701 Brickell Ave, Suite 1550
Miami, FL 33131
Telephone: (786) 369-1122
Facsimile: (732) 298-6256
Joseph@MarcusZelman.com
(*Pro Hac Vice forthcoming*)

***Attorneys for Plaintiff***